UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CONTINENTAL 611 FUND LLC,

        Plaintiff,

                                     Case No. 25-cv-594-pp

   v.

CERTAIN UNDERWRITERS AT LLOYDS LONDON, *et al.*,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT BRIEFING (DKT. NO. 14), GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 8), REMANDING CASE AND DECLINING TO RULE ON DEFENDANTS' MOTION TO COMPEL ARBITRATION (DKT. NO. 5)**

On March 7, 2025, the plaintiff filed a complaint in Waukesha County Circuit Court, alleging breach of contract and requesting declaratory relief. Dkt. No. 1-1. The defendants removed the case to this court, dkt. no. 1, and moved to compel arbitration and stay the litigation, dkt. no. 5. The plaintiff filed a motion to remand the case to Waukesha County, dkt. no. 8, and a brief in opposition to the defendants' motion to compel and stay, dkt. no. 10. After both motions had been fully briefed, the plaintiff filed a Civil Local Rule 7(h) expedited, non-dispositive motion to supplement its briefing on both motions with "newly discovered evidence." Dkt. No. 14.

The court will deny the plaintiff's motion to supplement its briefing but will grant the motion to remand and remand the case to Waukesha County

1

Circuit Court. Because the court lacks jurisdiction, it declines to rule on the defendants' motion to compel arbitration.

## I. Background

The plaintiff filed the state-court complaint, alleging that the defendant insurers wrongfully denied coverage for losses the plaintiff suffered related to a development project in Port Charlotte, Florida. Dkt. No. 1-1 at 8, ¶¶1–2. The plaintiff alleges that on or about September 28, 2022, Hurricane Ian caused significant property damage to the project. Id. at ¶¶13–14. It alleges that on October 12, 2022, it submitted to the defendant insurers a claim for the hurricane damage. Id. at ¶16. It asserts that on June 26, 2024, the defendants denied all coverage for damage to two of the buildings, failed to fully adjust and pay for all property damage suffered to five other buildings on the property and did not compensate the plaintiff for its related economic losses. Id. at ¶¶38–39. The complaint alleges breach of contract and seeks a declaration of the rights and duties of the parties under the applicable policies. Id. at 17–18, ¶¶43–53.

On April 24, 2025, the defendants removed the case to this court. Dkt. No. 1. They cited 9 U.S.C. §§202, 203 and 205, as well as 28 U.S.C. §§1441 and 1446. Id. at 1. The removal notice stated that this federal court had "exclusive federal jurisdiction over this case under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the 'New York Convention') . . . because several Defendants are foreign insurers and the commercial property insurance policy at issue requires 'all matters in difference' to be resolved by arbitration in New York." Id. at 1-2. The defendants

asserted that the policy contains an arbitration agreement that falls under the New York Convention because it arises between citizens of the United States and citizens of other countries. Id. at ¶¶6, 8–9. The defendants argued that removal was proper because the Federal Arbitration Act (FAA) confers original jurisdiction to the federal courts over actions falling under the New York Convention. Id. at ¶¶10–12.

A week later, the defendants filed a motion to compel arbitration and stay litigation. Dkt. No. 5. Three weeks later, on May 22, 2025, the plaintiff filed both a motion to remand the case to Waukesha County, arguing that the removal was improper and that this court lacks subject-matter jurisdiction, dkt. no. 8, and a brief in opposition to the defendants' motion to compel arbitration and stay litigation, dkt. no. 10. Approximately forty-five days later, after the plaintiff's motion to remand and the defendants' motion to compel arbitration and stay proceedings had been fully briefed, the plaintiff filed an expedited, non-dispositive motion to supplement its briefing with "newly discovered evidence." Dkt. No. 14. The defendant opposes that motion. Dkt. No. 15.

Because "[s]ubject-matter jurisdiction is the first issue in any case," Miller v. Southwest Airlines Co., 926 F.3d 898, 902 (7th Cir. 2019), the court normally first would address the plaintiff's assertion in its motion to remand that the court does not have subject-matter jurisdiction. But the plaintiff's motion to supplement seeks to supplement its briefing on both the motion to

remand and the motion to compel arbitration, so the court must resolve that issue before turning to the arguments in the motion to remand.

## II. Motion to Supplement Briefing (Dkt. No. 14)

The "newly discovered evidence" upon which the plaintiff bases its motion to supplement is "a different Service of Suit provision the Lloyd's Market Association approved years before Defendants issued the policies at issue in this lawsuit." Dkt. No. 14 at 1. The plaintiff states that this service-of-suit provision explicitly limits the lawsuits to which the insurers had consented to lawsuits that "aid in compelling arbitration or enforcing such arbitration or arbitral award." Id. at 1–2. The plaintiff contends that this language differs from the service-of-suit provision in the policy at issue in the instant case; according to the plaintiff, the service-of-suit provision in this case omits the language expressly limiting the lawsuits to which the defendants consent. Id. at 2. The plaintiff argues that the existence of such limiting language in the older service-of-suit provision constitutes "newly discovered" evidence that the defendants properly could have limited their consent to litigation related to the arbitration agreement in *this* policy, but that they chose not to do so. Id. at 2–3.

The defendants respond that the plaintiff has presented no legal authority permitting its supplemental briefing. Dkt. No. 15 at 2. They argue that this court generally does not permit parties to file sur-reply briefs and that the plaintiff did not comply with the court's Local Rules in submitting a proposed sur-reply. Id. at 2–3. The defendants contend that the "new evidence" on which the plaintiff relies predates the briefing in this case, so the plaintiff

4

could have discovered it prior to filing its briefs. Id. at 3. The defendants say that the plaintiff has not presented any new arguments based on the new evidence, and that even if the plaintiff had done so, the court is prohibited from considering extrinsic evidence in interpreting unambiguous contracts. Id. at 3–4. The defendants argue that even if the court considers the alleged "newly discovered" evidence (the older service-of-suit provision), the fact that the defendants chose to word a different contract in a different way does not render the contract before the court unenforceable or ambiguous. Id. at 4.

The court will deny the plaintiff's request to supplement its briefing. The court does not grant leave to file sur-replies as a matter of course, and they are disfavored. See Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 631 n.2 (7th Cir. 2010) (observing that granting leave to file a sur-reply is within the district court's discretion); Groshek v. Time Warner Cable, Inc., Case No. 15–C–157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016) (noting that sur-replies are permitted "only rarely; the local rules provide for a motion, a response and a reply, and in the vast majority of cases, this is sufficient"). The plaintiff did not comply with this court's Local Rules governing the filing of sur-replies or other supplemental materials. Civil Local Rule 7(i) (E.D. Wis.) states that "[a]ny paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it." The plaintiff did not file with its motion to supplement a proposed sur-reply brief. That is reason enough for the court to deny the motion. See Frakes v. Peoria

5

Sch. Dist. No. 150, 872 F.3d 545, 549 (7th Cir. 2017) (district courts have "considerable discretion" to interpret and enforce their local rules).

Even if the plaintiff had complied with the Local Rules, a policy provision from a different contract is neither relevant nor useful in interpreting the meaning of the contract at issue here. Because the plaintiff's motion did not comply with this court's procedural rules and because the proposed "newly discovered evidence" is not relevant, the court will deny the plaintiff's motion to supplement its briefing.

## III. Motion to Remand (Dkt. No. 8)

### A. Parties' Arguments

The plaintiff argues that this federal court should remand the case to state court because the federal court lacks subject-matter jurisdiction. Dkt. No. 9 at 1. It asserts that eight of the ten defendants are United States citizens, contending that the notice of removal alleges only that "Syndicate 510"—one of the "collection of underwriters" that make up defendant Certain Underwriters at Lloyd's, London—and Defendant HDI Global Specialty SE are foreign citizens. Id. at 3 (quoting Dkt. No. 1 at ¶¶4–5). It says that the policy at issue is not a single contract, but ten separate insurance contracts between the plaintiff and each of the defendants. Id. at 4–5. The plaintiff asserts that the terms of each policy are identical, but that they are, nonetheless, legally distinct contracts. Id. at 6. The plaintiff alleges that the policy for each separate contract includes an arbitration clause requiring that "[a]ll matters in difference between" the plaintiff and the insurers must be resolved in

6

arbitration. Id. (quoting Dkt. No. 1-2 at 41). But the plaintiff alleges that the insurers modified this standard clause by endorsement, attaching to the policy a service-of-suit provision that states:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. . . .It is further agreed that service of process in such suit may be made upon. . .and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Id. (quoting Dkt. No. 1-2 at 73) (bold, italics, underline omitted).

The plaintiff argues that the New York Convention does not apply to agreements between citizens of the United States unless the agreement involves property located abroad, involves performance or enforcement abroad or has some other relationship to one or more foreign states. Id. at 8. Again, the plaintiff argues that eight of the ten defendants (every defendant except Lloyd's and HDI) are United States citizens and that the insured property is in Florida, so the New York Convention does not apply to the contracts between the plaintiff and those eight defendants. Id. It contends that the defendants chose to adopt the separate contract structure to limit their liability to specified percentages in each contract, so it would be inequitable for the court to allow the defendants to now assert, when it benefits them, that there is a single contract. Id. The plaintiff cites other federal court cases, asserting that those courts found that the parties' separate contracts with domestic insurers precluded the application of the New York Convention. Id. at 9 (collecting

7

cases). The plaintiff argues that these decisions "unanimously confirm that the 'mere consolidation of separate insurance contracts into a single policy document that just so happens to include a foreign insurer is insufficient to prove a "reasonable relationship" to a foreign state worthy of subjecting a domestic insurer to the Convention.'" Id. at 10 (quoting Crescent City Surgical Operating Co. v. Certain Underwriters at Lloyd's, London, Case No. CV 22-2625, 2025 WL 239404, at *4 (E.D. La. Jan. 17, 2025); Recreation v. Indian Harbor Ins. Co., Case No. 22-CV-05287, 2024 WL 5145506, at *1 (W.D. La. Nov. 4, 2024)). The plaintiff contends that the court should remand the claims against the domestic insurers because there is no other alleged basis for subject-matter jurisdiction. Id.

As for defendant Lloyd's, the plaintiff argues that the court should remand the claims against it because the defendants have not alleged facts to establish that Lloyd's is not a United States citizen. Id. It asserts that the defendants state that one of Lloyd's underwriting members is a citizen of the United Kingdom, but that the defendants say nothing about the citizenship of any other underwriting member. Id. at 10–11. The plaintiff argues that the defendants must identify the citizenship of all the underwriting members because every Lloyd's syndicate "is a citizen of every state in which any name [natural person] is a citizen." Id. at 11 (citing Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 316 (7th Cir. 1998)). It maintains that absent information about the citizenship of all of Lloyd's members, it is "far from certain" that Lloyd's is a foreign citizen to whom the New York Convention may apply. Id.

8

The plaintiff goes on to assert that even if the defendants had established that HDI and all Lloyd's syndicates are solely foreign citizens, the New York Convention does not apply because the defendants modified their standard contracts to include an endorsement allowing litigation at the insured's request. Id. The plaintiff maintains that the service-of-suit provision expressly changes the policy terms. Id. at 12. It rejects the defendants' contention that the service-of-suit provision simply provides consent to litigation related to arbitration. Id. It argues that the defendants already were entitled to move to compel arbitration in any litigation arising out of the contracts and that no endorsement was needed to grant them that power. Id. at 12–13. The plaintiff says that the endorsement expressly "changes the policy," so the court must read the policy to change the rights of the parties in some way. Id. at 13. The plaintiff cites a case from Missouri where the state court of appeals interpreted a similar endorsement to override the contract's arbitration provision and permit litigation at the request of the reinsured. Id. at 14–15 (citing Transit Cas. Co. v. Certain Underwriters at Lloyd's, 963 S.W.2d 392, 393 (Mo. Ct. App. 1998)). The plaintiff concedes that the endorsement might be ambiguous and subject to multiple interpretations. Id. at 15. But it maintains that the court should construe any ambiguity in the plaintiff's favor and should allow the plaintiff to litigate in court rather than arbitrate. Id. at 15–16. The plaintiff argues that because the arbitration clause was amended by the endorsement, the New York Convention does not apply, and the court should remand the case to state court for lack of subject-matter jurisdiction.

9

The defendants respond that the arbitration agreement *does* fall under the New York Convention. Dkt. No. 12 at 4. They contend that the plaintiff's arguments do not address jurisdiction but go to the merits of the case by asserting that the arbitration agreement is not in force. Id. at 4–5. They argue that validity, enforceability and contract interpretation are not part of the court's jurisdictional analysis. Id. at 5 (quoting Ytech 180 Units Miami Beach Invs., LLC v. Certain Underwriters at Lloyd's, London, 359 F. Supp. 3d 1253, 1262 (S.D. Fla. 2019)). The defendants contend that the court should ask only whether the arbitration agreement falls under the New York Convention, without considering whether the arbitration agreement is enforceable. Id. at 5–6.

The defendants say that they need to show only that one of the parties to the arbitration agreement is not a United States citizen. Id. at 6. They argue that the plaintiff has conceded that defendant HDI is a German citizen, which means that prerequisite has been established. Id. at 7. The defendants argue that the plaintiff cannot now assert that there are separate contracts between it and each defendant when it pled the opposite in its complaint. Id. The defendants say that the complaint's allegation that there is a single contract should be considered a judicial admission that the plaintiff is bound by and that it cannot contradict in briefing. Id. at 8.

The defendants argue that even if there were separate contracts, the contract with Lloyd's falls under the New York Convention because at least one of Lloyd's members is a foreign citizen. Id. at 8–9. They say that there is no

requirement that *all* the members be foreign citizens, contending that the New York Convention applies so long as one party to the agreement is a foreign citizen. Id. at 9. The defendants argue that the plaintiff should be equitably estopped from arguing that the domestic insurers' contracts do not fall under the New York Convention. Id. They assert that equitable estoppel can be used by a non-signatory to compel arbitration with a signatory when there is substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories. Id. at 11 (citing Bufkin Enterprises, LLC v. Indian Harbor Ins. Co., 96 F.4th 726 (5th Cir. 2024)). The defendants maintain that the plaintiff's allegations against the domestic insurers are intertwined with its allegations against the foreign insurers. Id. at 12. They argue that under these circumstances, compelling arbitration against the foreign insurers while simultaneously allowing the plaintiff to proceed in court against the domestic insurers would render the arbitration clause meaningless. Id. at 13.

The plaintiff replies that the court has an independent obligation to determine whether jurisdiction exists, meaning that the court must assess the contracts as a whole rather than accepting the defendants' representations that jurisdiction exists. Dkt. No. 13 at 2. It argues that Congress has authorized removal to federal court only if there is an agreement to arbitrate, so the court must make some inquiry as to whether there is a valid agreement. Id. at 3. The plaintiff asserts that the court cannot refer the question of whether the arbitration agreement is valid to the arbitrator. Id. at 4. It contends that the

11

court does not need to go outside the pleadings or the removal notice to determine that there is not a valid arbitration agreement. Id. at 5–6. It says that the New York Convention does not apply to wholly domestic disputes. Id. at 6. The plaintiff argues that the defendants have not met their burden to show that Lloyd's is *not* a United States citizen. Id. at 7–8. The plaintiff also argues that equitable estoppel is not a jurisdictional question, but a merits question. Id. at 8. The plaintiff says that it did not allege in the complaint that there was a single contract, and maintains that even if it had, the terms of the contract control over the complaint. Id. at 9–10.

B.    Legal Standard

On a motion to remand, all doubt is resolved in favor of remand. Paldrmic v. Altria Corp. Servs., Inc., 327 F. Supp. 2d 959, 963 (E.D. Wis. 2004) (citing Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc., 70 F. Supp. 2d 888, 892 (E.D. Wis. 1999)). The statute governing the procedure that applies after a case is removed to federal court—28 U.S.C. §1447—"sets up two categories of reasons for remand: a 'defect in the removal procedure' and the absence of subject matter jurisdiction." Matter of Continental Cas. Co., 29 F.3d 292, 293 (7th Cir. 1994) (quoting Gravitt v. Southwestern Bell Telephone Co., 430 U.S. 723 (1977)). A federal court must remand a case if, at any time before final judgment, it appears that the court lacks subject-matter jurisdiction. 28 U.S.C. §1447(c).

12

C.     Analysis

In filing suit in Waukesha County Circuit Court, the plaintiff sought to litigate the provisions of the insurance policy. The defendants removed the case to federal court for the purpose of staying the litigation and asking this federal court to compel the plaintiff to arbitrate the dispute. That is where the question of subject-matter jurisdiction comes in.

"[I]t is settled that federal courts have jurisdiction over suits seeking to compel arbitration . . . only if the parties are of diverse citizenship, or some grant of jurisdiction other than § 1331 applies." Stone v. Doerge, 328 F.3d 343, 345 (7th Cir. 2003) (citation omitted). Neither party has alleged diversity of citizenship; it appears likely that there is no such diversity, because the complaint alleges that not only is the plaintiff a citizen of Delaware, but that the "Defendant Insurers are incorporated in, and have principal places of business, inter alia, around the United States (including Delaware) . . . ." Dkt. No. 1-1 at ¶¶3-4. That means that for this court to have subject-matter jurisdiction over the defendants' motion to compel arbitration, that jurisdiction must derive from some other source. The defendants argue that that other source is the New York Convention, a part of the Federal Arbitration Act that applies to arbitration agreements involving foreign entities or property.

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards—the "New York Convention"—is implemented at Chapter 2 of Title 9 of the United States Code (part of the Federal Arbitration Act, 9 U.S.C. §1, *et seq.*). Certain Underwriters at Lloyd's London v. Argonaut

13

Ins. Co., 500 F.3d 571, 573 (7th Cir. 2007); Johnson Controls, Inc. v. Edman Controls, Inc., 712 F.3d 1021, 2014 (7th Cir. 2013). "[A]ny commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention." Jain v. de Mere, 51 F.3d 686, 689 (7th Cir. 1995) (citing 9 U.S.C. §202). If the commercial agreement "is entirely between citizens of the United States," it is not covered by the Convention unless the commercial legal "relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. §202.

The New York Convention contains an express, statutory grant of federal jurisdiction: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. §203. The statute also contains express authorization for removing a state-court case to federal court:

> [w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. §205.

For removal to have been proper, then, the subject matter of the plaintiff's Waukesha County lawsuit would have had to "relate[] to an arbitration agreement . . . falling under the [New York] Convention." Id. There must have been an arbitration agreement, that agreement must have fallen under the New York Convention and the plaintiff's lawsuit must have "related to" that agreement.

Before considering whether those three elements are present here, the court notes that in their brief in opposition to the plaintiff's remand motion, the defendants did not directly address the plaintiff's claim that the service-of-suit endorsement overrode the agreement to arbitrate; in fact, they asserted that the plaintiff "does not seriously contest the presence of a written agreement between the parties providing for arbitration arising out of a commercial relationship." Dkt. No. 12 at 4. The defendants interpreted the plaintiff's argument as a merits-based argument that the arbitration agreement is not valid or enforceable, and they argued that it is premature for the court to consider that argument. See Dkt. No. 12 at 6 n.2. In a footnote, the defendants stated that "[b]ecause the Court does not need to engage in a 'merits inquiry' to determine whether removal was proper, Defendants do not address the substance of Plaintiff's enforceability arguments. As those arguments are identical to the ones made by Plaintiff in opposition to Defendant's [sic] Motion to Compel Arbitration and Stay Litigation, Defendants respond to those arguments in their contemporaneously filed reply brief in further support of that motion." Id.

The court will not consider or incorporate into its *remand* analysis the arguments the defendants made in their *reply brief in support of the motion to compel and stay*, because the defendants should have included those arguments when briefing the remand motion. "It is well-settled in this circuit that when a party fails to raise an argument, that argument is deemed waived." Dewey v. Bechthold, 387 F. Supp. 3d 919, 922 (E.D. Wis. 2019) (citations omitted).

Returning to the three questions the court must answer to determine whether removal was proper, the court first must consider whether the policy at issue involves a "commercial arbitral agreement." If there is no such agreement, the New York Convention does not apply and the court need not consider the questions of whether the agreement falls under the New York Convention or whether this lawsuit related to the agreement.

Section VII(C) of the policy is titled "ARBITRATION CLAUSE." Dkt. No. 1-2 at 41. It states, in pertinent part, that "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out." Id. If that were the only relevant language, the court would conclude that the policy contains a "commercial arbitral agreement" and would move on to the question of whether the agreement falls under the New York Convention.

16

But it is not the only relevant language. There is a document dated April 24, 1986. Dkt. No. 1-2 at 73. At the top of the page, the following statement appears: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. Below that appear the words "**LLOYD'S OF LONDON AMENDATORY**," followed by, "WITH RESPECT TO THE COVERAGE PROVIDED BY **CERTAIN UNDERWRITERS AT LLOYD'S LONDON**, THE FOLLOWING CLAUSES (SERVICE OF SUIT and APPLICABLE LAW) SHALL APPLY:" Id. Under the heading **Service of Suit Clause (U.S.A.) NMA 1998 4/24/86 (USA date)**," the document states, "It is agreed that in the event of the failure of the Underwriters hereupon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States." Id. There is a similar document related to the other defendants, although it is not dated. Again, at the top of the page, the document reads, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. at 98. It explains that it relates to the coverage provided by six of the other defendant companies (including HDI), and under the heading "**Service of Suit Clause(s)**," states that "[i]t is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States." Id.

The plaintiff is the "Insured." The plaintiff alleges that the defendants have "failed" to pay amounts the plaintiff has claimed under the policy (or policies). And the plaintiff has "requested"—by filing suit in Waukesha County Circuit Court—that the defendants submit to the jurisdiction of a court of competent jurisdiction within the United States. The plaintiff argues—and the court agrees—that that means that the applicable policy (or policies) no longer contains a "commercial arbitral agreement."

The defendants contend that for the court to reach this conclusion, it necessarily must decide whether the arbitration provision in the policy is valid or enforceable. They urge the court to look only at the arbitration clause itself, determine that the policy (or policies) contains a "commercial arbitral agreement" and move on to consider its arguments about whether that agreement is covered by the convention—ignoring any changes to the policy. But in reading the service-of-suit endorsements, the court is not inquiring into the merits of the arbitration agreement or its enforceability; the court is reading the terms of the contract to determine whether that contract contains a commercial arbitral agreement. Courts engage in this kind of contract interpretation in the analogous situation of a motion to remand based on a forum selection clause. See Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248 (7th Cir. 1996) (determining whether forum selection clause was part of the parties' contract and if so, whether it should be enforced and the case remanded); Wis. Freeze Dried LLC v. Redline Chambers, Inc., 375 F. Supp. 3d 1038, 1041–43 (E.D. Wis. 2019) (analyzing forum selection clause to

18

determine whether the plaintiff's claims were within its scope); Specialty Cheese Co. v. Universal Food & Dairy Prods., Inc., Case No. 07-CV-970, 2008 WL 906750, at *2–4 (E.D. Wis. Apr. 1, 2008) (remanding case after interpreting forum selection clause to determine that the parties intended any cases to be brought in state court).

Insisting that by reading the service-of-suit endorsements the court necessarily is determining the validity and enforceability of the arbitration clause, the defendants rely on Ytech, 359 F. Supp. 3d at 1261–62. But Ytech is a non-binding district court case from the Southern District of Florida. More instructive are cases from district courts in the Seventh Circuit.

In Li v. Longview Cap. Holdings, LLC, Case No. 23-CV-939, 2023 WL 8697951 (N.D. Ind. Dec. 15, 2023), the court considered a similar contract removed to federal court based on the New York Convention. The contract contained an arbitration agreement but also stated that the lender may "submit a dispute arising out of or in connection with this Agreement to any court of competent jurisdiction" rather than pursue arbitration. Id. at *1. The court concluded that it would not override the clear intent of the parties "simply because the policy favoring arbitration is implicated." Id. at *2 (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002)). While acknowledging the "low bar" for removing cases under the New York Convention, the court nonetheless remanded the case. Id. at *3. Another district court in this circuit came to the same conclusion when interpreting a similar contract. Juridica Invs. Ltd. v. S & T Oil Equip. & Mach. Ltd., Case No. 14 C 9135, 2014 WL

19

7450437, at *2–3 (N.D. Ill. Dec. 30, 2014) (remanding case where contract "expressly carves-out certain types of foreclosure claims from the Investment Agreement's arbitration provision and designates them with their own forum selection clause").

The <u>YTech</u> court did opine, based on Eleventh Circuit precedent, that a court determining whether it has jurisdiction under the New York Convention must limit its examination "to the pleadings and notice of removal." <u>YTech</u>, 359 F. Supp. 3d at 120 (citing <u>Outokumpu Stainless USA, LLC v. Converteam SAS</u>, 902 F.3d 1316, 1324 (11th Cir. 2018))[1]. The complaint filed in Waukesha County Circuit Court did not mention an arbitration clause. Dkt. No. 1-1. But the plaintiff attached to that complaint the policy, *including* the service-of-suit endorsements. Dkt. No. 1-2. And although the motion to remand discussed the arbitration clause, dkt. no. 1, it neglected to mention that there had been changes to the contract that impacted the arbitration clause.

In their response brief, the defendants did not argue that the service-of-suit clauses do not apply or are invalid. As the court has said, it will not inject into their briefing on the motion to remand arguments that they did not make (or more accurately, that they made only in their reply brief in support of their motion to compel arbitration and stay proceedings, dkt. no. 11). <u>See</u> <u>Hernandez v. Cook Cnty. Sheriff's Off.</u>, 634 F.3d 906, 913 (7th Cir. 2011) ("skeletal" arguments and arguments made for the first time in reply briefs are waived);

---

[1] This decision appears to have been reversed and remanded. <u>GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC</u>, 590 U.S. 432 (2020).

United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The New York Convention does not grant this court subject-matter jurisdiction; it does not cover the policy that is the subject of this suit because that policy does not contain a "commercial arbitral agreement." The defendants have not raised any other argument in support of federal subject-matter jurisdiction. The court will remand the case to Waukesha County Circuit Court due to lack of jurisdiction. Mack v. Resurgent Capital Services, L.P., 70 F.4th 395, 403 (7th Cir. 2023) ("[A] court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction."). Because the court lacks jurisdiction, it declines to rule on the defendants' motion to compel arbitration.

## IV. Conclusion

The court **DENIES** the plaintiff's motion to supplement its briefing. Dkt. No. 14.

The court **GRANTS** the plaintiff's motion to remand. Dkt. No. 8.

The court **REMANDS** this case to Waukesha County Circuit Court.

The court **DECLINES TO RULE** on the defendants' motion to compel arbitration and stay litigation. Dkt. No. 5.

Dated in Milwaukee, Wisconsin this 15th day of October, 2025.

BY THE COURT:

_____

HON. PAMELA PEPPER
**Chief United States District Judge**

21